## THE DITMAR KOEL.

### HANSEATISCHE REEDEREI AKT. GES. et al. v. ATLANTIC GULF & ·PACIFIC CO.
### No. 6853.

Circuit Court of Appeals, Fifth Circuit.

June 14, 1933.

Edwin C. Hollins, of New Orleans, La., for appellants.

J. Newton Rayzor, of Houston, Tex., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from a decree in admiralty adjudging the steamship Ditmar Koel solely at fault for coming into collision with the dredge George W. Catt. The collision occurred at night in the Houston ship channel, the bow of the steamer striking slightly to the starboard of the dredge's stern. The district court in its findings of fact adopted the view that the proximate cause of the collision was that the ship was navigated at an unsafe and dangerously high rate of speed, while attempting to pass the dredge which had suspended its work of deepening and widening the channel and moved over to one side for the purpose of leaving unobstructed enough width of channel to permit the steamer to effect a safe passage. It is contended on this appeal on behalf of the steamer that the sole proximate cause of the collision was the failure of the dredge to clear the channel.

The channel was 250 feet wide at the bottom and 350 feet wide at the top. The Ditmar Koel's length was 400 feet, beam 53 feet, and it was drawing 23 feet. The length of the George W. Catt was 174 feet, beam 38 feet, draft 12 feet; extending out in front of it was a cutter on a ladder, which when placed in a horizontal position added 53 feet to the length of the dredge, and so made the length overall 227 feet. Before the collision the steamer was proceeding from Houston toward Galveston. The dredge, with its stern held stationary by a spud, was swinging its bow with cutter down deepening and widening the channel. Those on board the steamer knew the approximate location of the dredge and of the work it was doing; the steamer had passed it on the way up to Houston a few days before, and observed its lights for several miles as it approached on the night of the collision. For an hour and twenty minutes the steamer had been coming down the channel at full speed, making over ground about 9 miles an hour. When it arrived within about

3,000 feet of the dredge, signals were exchanged by which it was agreed that the steamer should pass on the east side of the channel with the dredge on its starboard side. According to the testimony for the dredge, those in charge of it first saw the steamer approaching fifteen minutes before the collision, when it was more than two miles up the channel. They immediately suspended dredging operations, swung the cutter onto the west bank, raised the spud, warped the stern by means of a cable 50 feet from the center of the channel toward the west bank, and then dropped the spud to hold it stationary; thus leaving 175 feet width of channel for the steamer. After these maneuvers the dredge was lying on the west side with bow downstream. They had completed this change in the dredge's position before the exchange of signals. According to the chief engineer's log book and the deck bell book entries in which are conceded to be correct, the steamer continued at full speed ahead until 7:25 p. m. when its engines were placed at half speed ahead and slow speed ahead in the same minute. At 7:27 the engines were again put at full speed ahead and held at that speed until 7:28 when the bow of the steamer crashed into the stern of the dredge, after which they were immediately stopped, and then put full speed astern. The master of the steamer and the pilot testified that the steamer was five or six hundred feet from the dredge when the order was given and executed for half speed, and that, while running at this or slow speed close up to the east bank, the steamer took a sheer to the starboard over toward the dredge; that in an effort to break the sheer and to avert a collision the engines were placed at full speed ahead again, and in the same minute full speed astern when it was seen that a collision was inevitable. In the last minute while the engines were at full speed ahead the port anchor was let go in a further effort to break the sheer. As a result of the collision the cutter of the dredge was forced 40 feet into the west bank, and after the collision it was found that the dredge was at right angles to the west bank with its stern extending beyond the center of the channel a distance variously estimated at from 16 to 40 feet. Witnesses called by the steamer undertook to say that the dredge was in this position before the collision, but their testimony on this point is all guesswork and is in direct conflict with the positive testimony.

■ It is agreed on all sides that the sheering of the steamer was the immediate cause of the collision. It is perfectly apparent also that the sheering was in turn caused by excessive speed in the narrow channel. Careful navigation at moderate speed was all that was needed to insure a safe passage, but that much caution was imperatively required. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126. The negligence of the steamer was so gross as to cast upon it the burden of proving by clear and convincing evidence contributory fault on the part of the dredge. Any doubts arising from such proof are to be resolved against the steamer and in favor of the dredge. The Norne (C. C. A.) 59 F. (2d) 145, and the Supreme Court cases there cited. The testimony of the witnesses who were on the dredge to the effect that it was moved over so as to leave 175 feet width of channel for the passage of the steamer is to say the least as plausible as is the testimony of witnesses for the steamer who say that after the collision the stern of the dredge extended across the center of the channel. The result is that the steamer has not met and sustained the burden of proof that was upon it. Appellants contend that the dredge was at fault, since because of its light draft it could have given up more of the channel than it did to the steamer. In support of this position they rely on 33 USCA § 409, which provides that it shall not be lawful to anchor vessels in such manner as to prevent or obstruct the passage of other vessels, and on certain cases applying that statute. The statute refers to anchored vessels. Of the cases cited, The City of Birmingham (C. C. A.) 138 F. 555, Ross v. Cornell Steamboat Co. (D. C.) 143 F. 166, and The Itasca (D. C.) 117 F. 885, had to do with dredges which were being operated not at night but only during the daytime, and were anchored in the channel at night when the collisions occurred. In The Ticeline (C. C. A.) 239 F. 119, the dredge was under agreement to keep out of the way of passing vessels. At the time of the collision it was working, but did not begin to get out of the way in answer to signals until the approaching vessel was within 200 feet of it. In the Chauncey M. Depew (D. C.) 59 F. 791, the dredge was exonerated. In our opinion the statutory rule against the anchorage of vessels in navigable channels does not apply to a dredge which is not anchored, but is engaged at the time of collision in channel improvement. By section 4 of the Rivers and Harbors Act of August 18, 1894, as amended, the Secretary of War is authorized to prescribe regulations for the protection of life and property in channel improvement. 33 USCA § 1. The Secretary of War, pursuant to this section, in regulations for the naviga-

tion of the Houston Ship Channel, has required that dredges working in the channel must "take special care to give vessels of 280 feet or more in length sufficient room for passing, and must lift both spuds and the ladder and pull clear, if an adequate width of the clear channel way cannot otherwise be provided." According to the witnesses for the dredge, whose testimony as we have seen was not overcome by clear and convincing evidence, sufficient room, or an adequate width of channel, for passing was provided by the dredge for the Ditmar Koel. Neither statutory rule nor regulation of the War Department required the dredge to clear the entire width of the channel.

The decree is affirmed.