**SOCONY–VACUUM OIL CO., Inc. v. THE GEORGE W. McWILLIAMS et al.**

No. 835.

United States District Court
S. D. Texas, Houston Division.

Nov. 1, 1951.

Royston & Rayzor (Robert Eikel), of Houston, Tex., for libellant.

Deutsch, Kerrigan & Stiles, of New Orleans, La. and Fulbright, Crooker, Freeman & Bates (Sweeney J. Doehring), of Houston, Tex., for respondents.

KENNERLY, Chief Judge.

On May 23, 1946, and several previous days, the Dredge George W. McWilliams, owned and operated by Respondent Mc-Williams Dredging Company, was dredging in the Port Arthur-Sabine Pass Channel or Canal, in fulfillment of a contract with the United States of America. During the forenoon of May 23, 1946, a collision occurred between such Dredge and the Steamship Magnolia, owned and operated by Libellant, in such Channel or Canal in the vicinity of Station 140 or 141, in a southerly direction from the town of Sabine. The Magnolia was injured and damaged. The Dredge was injured and damaged.

This is a suit by Libellant against the Dredge and her owner for damages for injury to the Magnolia, and a cross action by Respondents against Libellant for injury to the Dredge.[1]

(a) The following description of the Dredge is taken from Respondents' Brief and is substantially correct:

"The Dredge George W. McWilliams is an hydraulic, or suction dredge. Her hull is 168 feet long and 46 feet wide. At the stern of the dredge are two spuds, which are used to hold the dredge in position during dredging operations. These spuds are set 12 feet inboard the port and starboard sides, respectively, of the hull of the dredge. During this operation the dredge was carrying a ladder 100 feet long with an attached cutterhead 6 feet long. This increased her overall length to 274 feet.

"With the ladder resting on the bottom of the channel, in about 40 feet of water, the distance from the stern of the dredge to its cutterhead was approximately 250 feet."

(b) The Magnolia was about 500 feet long, with a 68 foot beam, and a loaded draft of about 31 feet.

(c) At the time of the collision, the Dredge was lawfully and actively engaged in dredging in such channel or canal. The Steamship, fully loaded with a cargo of petroleum, was proceeding from the vicinity of Beaumont, Texas, to sea. The Dredge was near the west bank of the channel, with her soil pipeline running across the channel to the east bank. She was obstructing the channel except the space between the Dredge and the west bank.

(d) As the Steamship approached the Dredge, signals were exchanged between them whereby both vessels agreed for the Steamship to pass to the starboard of the Dredge and between the Dredge and the west bank. In so passing, the Steamship touched the west bank of the channel or canal, sheered to port and struck the Dredge. The Steamship was injured. The Dredge was injured.

(e) Libellant charges that Respondents were negligent in the following particulars, which negligence it says was the proximate cause of such collision and such injury:

"(1) The dredge was not in charge of competent persons.

"(2) The dredge failed to keep a good lookout.

"(3) The dredge failed to allow sufficient space in the channel for the passing vessel under the circumstances there existing.

"(4) The dredge improperly and negligently failed to carry out the agreed upon passing.

"(5) She improperly agreed to a passing with knowledge that she had left insufficient room for the vessel to pass safely.

"(6) She failed to move and allow sufficient room for the vessel to pass after agreeing to the passing.

1. There is pending in this Court Admiralty No. 834, D.C., 101 F.Supp. 910, brought by the same Libellant against the same Respondents to recover damages to the Steamship Samoset, owned by Libellant, which was on the after-noon of May 22, 1946, also in a collision with such Dredge. The two cases were tried together, but separate Findings and Conclusions will be made and filed, and separate Judgments entered in each case.

"(7) She failed to keep on her own proper side of the channel.

"(8) She unlawfully blocked the navigable channel.

"(9) She failed to move and allow sufficient room for the S/S Magnolia to pass when danger of the collision was or should have been apparent.

"(10) She invited a passing with knowledge that the vessel could not safely pass and with the intention of taking no steps to permit safe passage.

"(11) She did not take any effective steps to avoid the collision.

"(12) She was negligent in other respects to be shown on trial."

(f) Respondents charge that Libellant was negligent in the following particulars, which negligence they say was the proximate cause of such collision and such injury to the Dredge:

"(a) The T/S Magnolia was proceeding at an excesssive rate of speed under the circumstances, in violation of the provisions of Section 312.26 of the Pilot Rules for Inland Waters.

"(b) In violation of the duty imposed upon her by law and by the provisions of War Department Notice to Navigation Interests No. 46–36 (Galveston District, May 1, 1946), the T/S Magnolia did not proceed with caution in approaching and passing the Dredge George A. McWilliams.

"(c) The T/S Magnolia remained in the center of the channel until just before the collision occurred, and until after it was too late to avoid the collision.

"(d) The T/S Magnolia failed to keep to the west of the Dredge George A. McWilliams while passing her.

"(e) The T/S Magnolia failed to stop, use her anchors, or head away from the Dredge George A. McWilliams by reversing her engines and checking her movements when danger of collision first became, or should have become, apparent.

"(f) The master, pilot, officers and crew of the T/S Magnolia failed to exercise proper attention to their duties.

"(g) The T/S Magnolia failed to keep a proper lookout.

"(h) The T/S Magnolia was not in charge of competent persons.

"(i) The T/S Magnolia failed to do anything to avoid the collision."

(g) I am convinced that Libellant's contentions are not meritorious. I do not find Respondents to have been negligent in the respects named or any other respect. Particularly I think there was sufficient space between the Dredge and the west bank of the channel or canal for the Magnolia to pass. I think any reasonably prudent person situated as were those in charge of the Dredge would have called for and/or agreed to such passing. The Magnolia was being navigated by trained and experienced navigators and clearly they thought there was sufficient space for the Magnolia to pass. The record shows that many ships had near the time of the collision safely passed the Dredge under the same or similar circumstances.

(h) I do not think that those in charge of the Magnolia have been shown to be negligent in the particulars mentioned by Respondents in their cross action, nor otherwise. The evidence does not point out any negligent act or acts by Libellant. I think that the sheer of the Magnolia, as in the case of the sheer of the Samoset, was one of those unexplainable incidents which frequently occur in the navigation of vessels.

Since I do not find that either Libellant or Respondents were in any way negligent, I think Libellant may not recover against Respondents, and Respondents may not recover against Libellant on their cross action.

Judgment that both Libellant and Respondents take nothing.