MUTUAL OIL COMPANY, Inc., a corporation, Owner of the Barges THE MUTUAL NO. 2 and THE GERTRUDE K, Libellant,

v.

M/V THE SWAMP ANGEL, her tackle, etc., and Thurston Crawford, doing business as River Transit Company, a sole Proprietorship, Respondent-Claimant,

Thurston CRAWFORD, doing business as River Transit Company, as Owner of THE BARGE RT–34, Cross-Libellant,

v.

THE Tug OLD MACK (formerly the Tug THE GEORGE B. ZEIGLER), her boilers, etc., and Mutual Oil Company, Inc., a corporation, as owner of said tug, Cross-Respondent.

No. 2594.

United States District Court
S. D. Alabama, S. D.

Dec. 6, 1957.

As Amended Feb. 5, 1958.

Alexander F. Lankford of Hand, Arendall & Bedsole, Mobile, Ala., Faris, Leake & Emmett, New Orleans, La., for libelant.

George F. Wood, of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for respondent.

THOMAS, District Judge.

At about 5:00 a. m., on January 16, 1957, the tow of the Tug Old Mack (then the Tug George B. Zeigler), owned by the Mutual Oil Company, and the tow of the M/V Swamp Angel collided at Coffeeville Bend on the left descending bank of the Tombigbee River between Miles 118 and 119. The Mutual Oil Company, as owner of the damaged Barges Mutual No. 2 and Gertrude K, libelled the M/V Swamp Angel and Thurston Crawford, doing business as River Transit Company, owner of the M/V Swamp Angel and the Barge RT–34. The respondents answered and cross-libelled, admitting the collision, but alleging that it was caused by the sole fault of the Tug George B. Zeigler.

The case came on for trial on the issue of liability only, and the Court, having considered the pleadings, the evidence adduced, and the law applicable, makes the following findings of fact and conclusions of law:

Findings of Fact

Shortly after 5:00 a. m., on January 16, 1957, the Tug George B. Zeigler was northbound in the vicinity of Mile 118 on the Tombigbee River when her pilot sighted beams from the search lights of a southbound tow around Coffeeville Bend. This southbound tow later proved to be the M/V Swamp Angel, pushing the loaded steel hopper Barge RT–34.

The George B. Zeigler is a single-screw, steel tug approximately 65 feet in

length, 15 feet in beam and 4.5 feet in depth. She is powered by a single Atlas diesel engine of about 400 horsepower, which is engine-room controlled. The Zeigler was faced up to the Gertrude K; and the Mutual No. 2, the lead barge, was made up tight sternlog to headlog with the Gertrude K. The Mutual No. 2 is approximately 175 feet in length, 40 feet in beam and was loaded with a mixed petroleum cargo to a draft of 7 feet. The Gertrude K is approximately 220 feet in length, 50 feet in beam, and was loaded with a mixed petroleum cargo to a draft of 8.5 feet.

The Swamp Angel is a twin-screw, steel towboat with a square bow, and is approximately 55 feet in length, 20 feet in beam, and 9 feet in depth. She is powered by four General Motors diesel engines of 300 horsepower each, which are pilothouse controlled. She also has two steering rudders located aft of her propellors and used for steering when going ahead, and two backing rudders located forward of her propellors and used for steering when going astern. Although these backing rudders were in place, they were not connected so as to be in an operating position. She was faced up to the steel hopper Barge RT–34, which is approximately 220 feet in length and 50 feet in beam, and which was loaded heavily with a cargo of coal.

The river, in the vicinity of the Coffeeville Bend, is about 350 feet in width and makes a gradual turn of about 90° to the left when one is northbound. A paperwood barge was tied up to the east bank of the river in this bend, and projected out into the river for a minimum distance of 100 feet. Not too far below the bend, a bridge under construction projected about 100 feet out into the river from the west bank. The pilots of both vessels knew of the presence of the paperwood barge and bridge construction.

At the time, there was a very slight current running, which did not exceed 1 m. p. h. The night was dark, visibility was good, and there was little or no wind.

Both flotillas were showing proper navigation lights.

The Zeigler's pilot had been informed in a radio conversation with the M/V Alabama, which was about six miles up river from the Zeigler, that the Swamp Angel was southbound, and that she could receive on her radio, but could not transmit. The Swamp Angel's radio had been "out", so far as transmitting was concerned, since January 11, 1957.

The pilot of the Zeigler called the Swamp Angel, and after establishing by light signal from the Swamp Angel that his transmissions were being received, he advised the Swamp Angel that the Zeigler and her tow were in the vicinity of the Ferry Crossing (Mile 118). After advising the Swamp Angel of its position, the Zeigler's pilot asked for a signal from the Swamp Angel to indicate whether or not, from the Swamp Angel's position and speed, the Zeigler and her tow would have time enough to get past this paperwood barge and back across the river to the west bank at the point of the bend to shape up for a starboard-to-starboard passing. The Swamp Angel's pilot answered with his light, signifying affirmatively that the Zeigler and her tow would have time to maneuver for such a passing. The Zeigler and her tow were then at about Mile 118, making about 4.5 m. p. h., and favoring the east side of the river, or the Zeigler's righthand side of the channel. The Swamp Angel and her tow were then at about Mile 119 near the center of the river, and proceeding between 11 and 12 m. p. h.

Approximately two minutes after the exchange of radio and light signals, when the head of the Zeigler's tow was about 300 feet below the paperwood barge and about 100 feet off of the east bank, the Zeigler's pilot sighted the lights on the head of the Swamp Angel's tow. The Swamp Angel's tow was then coming around Coffeeville Bend, near the center of the river, but favoring and heading for the east or bend side of the river, making about 9 m. p. h. over the ground. At this time the Swamp Angel's port

engine was pulled out, or in neutral, and the starboard engine was going ahead. The heads of the respective tows were then about 1200 feet apart.

At this time, considering the respective positions of each vessel and tow, and particularly the speed of the Swamp Angel, it would have been impossible for the Zeigler and her tow either to have gotten past the paperwood barge and back across the river for a starboard-to-starboard passing, or to have attempted to move to its left or west bank in order to make such starboard-to-starboard passing before reaching the paperwood barge.

The Zeigler sounded one short blast on her whistle proposing a port-to-port passing, and her engine was backed full speed astern in order to give the Swamp Angel as much time and space as possible to pass in that manner. The Swamp Angel answered this signal with four short blasts on her whistle, or the danger signal, and went full astern on both engines. This was the first whistle signal given by the Swamp Angel. The Zeigler answered the Swamp Angel's signal with the danger signal, and continued backing full speed astern.

Approximately two minutes after the Zeigler had sighted the Swamp Angel's tow, or at about 5:10 a. m., a collision occurred about 100 feet below the paperwood barge and about 100 feet off the east bank of the river. The starboard corner of the Swamp Angel's Barge RT–34, collided with the rake of the Zeigler's lead barge, Mutual No. 2, at a point about 4 feet from her port corner to a depth of about 6 feet, then moving to starboard across the entire rake of the barge. The rake of the Gertrude K was also damaged, as was the rake of the RT–34.

The Swamp Angel had not changed her course or reduced her speed from the time she was sighted by the Zeigler's pilot, and on impact was still making about 9 m. p. h. The speed of the Swamp Angel and her tow was such that putting both engines full astern had little or no effect in slowing its forward progress; and had the Swamp Angel's backing rudders been operating, her speed was such that these rudders would not have assisted in maneuvering the head of the tow so as to avoid the collision. The Zeigler and her tow were dead in the water, or almost so, at the time of the impact.

### Conclusions of Law

I. The subject matter of this litigation, a marine collision, is within the admiralty and maritime jurisdiction of the court. 28 U.S.C.A. § 1333.

II. Navigation of the waters wherein this collision occurred is governed by the Inland Rules, 33 U.S.C.A. § 171 et seq.

III. The proximate cause of this collision was the negligence of the Swamp Angel in failing to hold up or slow down to the speed necessary to control her tow when her pilot knew, or should have known, that the Zeigler and her tow would be met somewhere in the Bend, which was partially obstructed by the paperwood barge, and further, that the river just below the bend was also obstructed by bridge construction work. Griffin on Collisions, Sec. 255, and cases cited therein; The Ditmar Koel, 5 Cir., 65 F.2d 555, 1933 A.M.C. 1015; Socony-Vacuum Oil Co. v. Smith, 5 Cir., 179 F.2d 672, 1950 A.M.C. 445.

IV. Although the failure of either vessel to sound a bend signal may be regarded as a technical statutory fault, under the circumstances in this case, where each vessel knew that the other was within close proximity of the bend, these errors did not contribute to the collision. Pure Oil Company v. The F. B. Walker, D.C.La., 127 F.Supp. 867, 1955 A.M.C. 413.

V. Libellant is entitled to recover of and from respondents its damages with interest thereon from date of collision, and its costs. The respondents' cross-libel is dismissed, with costs, in favor of libellant.

Let decree be prepared in accordance with these findings.